UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
DIVISION

LARRY STIFF #364228,

                Petitioner,

v.

MIKE BROWN,

                Respondent.

_____/

Case No. 2:20-cv-251

Maarten Vermaat
U.S. Magistrate Judge

## **OPINION**

### I.    **Introduction**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Larry Stiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On September 1, 2017, following a jury trial in the Muskegon County Circuit Court, Stiff was convicted of two counts of first degree criminal sexual conduct (CSC). (ECF No. 6-6, PageID.1654.) On October 11, 2017, Stiff was sentenced as a second-offense habitual offender to a term of 24 to 51 years of imprisonment. (ECF No. 5-5, PageID.385.)

Stiff filed a claim of appeal in the Michigan Court of Appeals. The Michigan Court of Appeals affirmed Stiff's conviction. *People v. Stiff*, 2019 WL 5198929 (Mich. App., Oct. 15, 2019). Stiff subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised most of the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it

was not persuaded that the questions presented should be reviewed by the Court.

*People v. Stiff*, 944 N.W.2d 693 (Mich. 2020) (unpublished table decision).

The petition raises the following grounds for relief:

I.     Stiff was denied a fair trial and his federal constitutional rights by the introduction of unduly prejudicial evidence concerning alleged prior bad acts.

II.     The prosecutor violated Stiff's federal constitutional rights and denied him a fair trial by committing misconduct and denigrating the defense, and defense counsel was ineffective for failing to object.

III.     Stiff's federal constitutional rights were violated where trial counsel was ineffective for failing to strike a juror who had a brother who was a victim of CSC and a juror who had read about the case in the newspaper.

IV.     Stiff was denied a fair trial and his federal constitutional rights by the admission, after defense objection, of a kite sent to a detective in an effort to garner a good plea deal.

V.     Stiff was denied a fair trial and his federal constitutional rights by the admission, over defense objection, of text messages that had nothing to do with the case, were vague and irrelevant.

VI.     Stiff was denied his federal constitutional rights by a detective obtaining a search warrant under fabricated evidence and false pretenses.

VII.     Stiff's federal constitutional rights were violated where trial counsel was ineffective for not showing a bar video.

VIII.     Stiff's federal constitutional rights were violated where trial counsel was ineffective for not making Ms. [W] bring in her medical records to the court before or during trial.

IX.     Stiff's federal constitutional rights were violated where trial counsel was ineffective for failing to impeach a witness.

X.     Stiff's federal constitutional rights were violated where trial counsel was ineffective for failing to utilize a toxicologist and private investigator the court granted and agreed to pay for that counsel obtained.

2

XI.  Stiff's federal constitutional rights were violated where trial counsel was ineffective for persuading defendant to openly discuss his prior criminal history.

XII.  Stiff's federal constitutional rights were violated where trial court erred by allowing a police officer to read a police report into evidence.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the Stiff's claims lack merit and deny the petition.

## II.    Factual allegations

The Michigan Court of Appeals described the facts underlying Stiff's convictions as follows:

> Defendant's convictions arise from the sexual assaults of KW and SL. According to the evidence at trial, defendant committed these offenses with codefendant Joshua Matthew-Rollin Humphrey. Humphrey met KW on an online dating site, and he arranged to meet her at a bar where defendant was also present. At the bar, KW met SL. Humphrey purchased shots of alcohol for KW, SL, himself, and defendant. After consuming the shots, both KW and SL felt "funny;" they described feeling "dizzy," "woozy," "out of body," "numb," and "fuzzy." Defendant and Humphrey then drove the victims to defendant's home where the sexual assaults occurred in defendant's basement. KW and SL both denied consenting to any sexual activity with defendant or Humphrey. Indeed, they described losing consciousness and coming in and out of consciousness during the sexual assaults. They also described feeling "very heavy and sluggish," like they could not move their bodies.

> In the morning, KW and SL were missing clothing and their cell phones. KW reported the incident to police. She also underwent a sexual assault examination and provided a urine sample. Her urine showed the presence of prescription medications that, according to an expert in forensic toxicology, could be used as rape date drugs, "especially if used together or used together with alcohol." Potential side effects of the medications included sedation and ataxia—i.e., muscle weakness that would be consistent with the victims' descriptions of feeling like they could not move.

DNA evidence supported the conclusion that defendant and Humphrey had sexual intercourse with KW and SL. At trial, defendant admitted that he had sexual intercourse with both KW and SL. His defense was that he did not know, and had no reason to know, that the victims were physically helpless or mentally incapacitated. Defendant testified that he was unaware they had been drugged by Humphrey, and he claimed that he thought he had consensual sex with the victims. The jury convicted defendant of two courts of CSC-I. This appeal followed.

*People v. Stiff*, 2019 WL 5198929 at *1.

### III.   AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020).  "The more

general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*,

6

*Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim — "AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo.  Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### IV.   Other Acts Evidence (Claim I)

Stiff claims that the trial court improperly admitted testimony during trial from seven other women who were victimized by the scheme he created with his co-defendant.  Stiff argues that this admission of other acts testimony violated his due process right to a fundamentally fair trial.  Stiff further argues that the minimal probative value of the evidence was substantially outweighed by the danger of unfair prejudice resulting from the introduction of other-acts evidence at trial.

Stiff maintained that he had consensual sex with KW and SL.  (ECF No. 10, PageID.1669.)  Stiff says that he was unaware that his co-defendant had drugged KW and SL at the bar, and he had no reason to know that were mentally incapacitated or physically helpless at the time of the sexual act.  (*Id.*)  The trial court admitted the testimony of the other victims because of the "significant probative value" showing whether Stiff was an "unwitting accomplice" or was involved in a "common scheme to sexually assault physically helpless and mentally handicapped women." *People v. Stiff*, 2019 WL 5198929 at \*4.  The Court allowed the testimony under Michigan

Rules of Evidence (MRE) 404(b) because the probative value of the evidence outweighed the prejudicial effect.  MRE 404(b) provides:

> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

*Id.*

The Michigan Court of Appeals rejected Stiff's argument that the testimony violated his rights and was not admissible:

> In this case, although the other-acts evidence was prejudicial to defendant, it was not unfairly so, and any prejudice did not outweigh the probative value of the other-acts evidence. As discussed, contrary to defendant's characterization of the other-acts evidence as "minimally" relevant, the evidence had significant probative value regarding whether defendant acted as Humphrey's unwitting accomplice or whether he undertook the sexual assaults on KW and SL as a part of a common scheme to sexually assault physically helpless and mentally incapacitated women. Defendant nevertheless asserts that this other-acts evidence "overshadowed" the charged conduct in the current case, but the charges in the current case involve the egregious sexual assault of two drugged women, and there is nothing in the nature of the other-acts evidence—involving similar conduct—that would overshadow the abhorrent characteristics of the charges of which defendant stood accused in this case. Cf. *Starr*, 457 Mich at 499-500 ("The danger the rule seeks to avoid is that of unfair prejudice, not prejudice that stems only from the abhorrent nature of the crime itself."). Although defendant complains of the sheer volume of other-acts evidence, under the doctrine of chances, given defendant's claimed defense in this case, the number of other-acts victims and the frequency of defendant's conduct in concert with Humphrey was in fact relevant to a determination of the likelihood that defendant knew that the women had been drugged and that he did not innocently or mistakenly assault them. See *Mardlin*, 487 Mich at

616-617, 625; *Kelly*, 317 Mich App at 646-647 & n 4; see also *Bourjaily v United States*, 483 US 171, 179-180; 107 S Ct 2775; 97 L Ed 2d 144 (1987) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts."). Overall, defendant has not shown that the amount of other-acts evidence was unfairly prejudicial or cumulative, particularly when the trial court restricted the prosecutor in the number of other-acts witnesses that could be called and when the trial court gave the jury instruction a limiting instruction on the proper use of other-acts evidence. See *People v Orr*, 275 Mich App 587, 593; 739 NW2d 385 (2007).

*People v. Stiff*, 2019 WL 5198929 at *4.

To the extent Stiff alleges that the trial court violated Michigan law or the Michigan Rules of Evidence in admitting other acts evidence, such claims are non-cognizable upon federal habeas review.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67–68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470,

475–76 (6th Cir. 2017).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Stiff is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523 (2000)).  Stiff has not met this difficult standard.

Most importantly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007).  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  Because there was no

10

constitutional violation in the admission of this evidence (bad acts), the state court decision was "far from" an unreasonable determination of the facts in light of the evidence presented.  *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001); *Bugh*, 329 F.3d at 512.  Stiff's assertion that the trial Court improperly admitted bad acts evidence in violation of his rights lacks merit.

### V.      Prosecutorial Misconduct (Claim II)

Stiff argues that the prosecutor committed misconduct by denigrating defense counsel, mischaracterizing the evidence, making statements not supported by the evidence, and making improper comments during closing argument and rebuttal. (ECF No. 1, PageID.7.)

Stiff says that during closing argument the prosecutor made statements that were not supported by the evidence such as "defendant  . . . said that Josh bought drinks and drugged and raped these woman" and "defendant told you they were drugged."  Stiff says that the prosecutor argued that "the defendant has told you they were mentally incapacitated or physically helpless."  (ECF No. 1-2, PageID.53.) During rebuttal, the prosecutor stated that defense counsel's arguments were "red herrings" and "great showmanship" and made a reference to "defense attorney 101." (*Id.*)   The prosecutor also made a statement that Stiff had prepared for trial by reading the transcripts of his co-defendant's trial and called Stiff "a professional witness."  (*Id.*)   Finally, the prosecutor referenced text messages as evidence that Stiff knew the drinks contained drugs and then stated the conclusion that Stiff had "raped Shonell afterwards".  (*Id.*)

11

Respondent argues that Stiff procedurally defaulted these claims because he failed to object during trial. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986);

*Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536.  A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The Michigan Court of Appeals noted that Stiff failed to preserve his prosecutorial misconduct claims and rejected them under a plain error review.  The Court explained:

> Considering the prosecutor's comments as a whole and in context, the prosecutor's basic assertion was that defendant agreed at trial that Humphrey had drugged the women and raped them while they were mentally incapacitated or physically helpless. Although defendant claims that the prosecutor's statements were factually unsupported, during his trial testimony, defendant readily admitted that Humphrey bought drinks for the women, defendant testified about Humphrey's "medical" background, defendant admitted that he was "willfully blind" to Humphrey's drugging of women, and defendant acknowledged that he believed that the women were drugged by Humphrey while they were at the bar. Indeed, the defense theory of the case, as set forth during opening statements, was that KW and SL were raped and that Humphrey was the rapist—a "sexual predator" and a "sociopathic monster," who met women through the internet, drugged them, and raped them. In this context, the prosecutor did not engage in misconduct or argue facts not in evidence by asserting that defendant acknowledged that Humphrey drugged and raped the victims. Defendant has not shown plain error.
>
> Second, defendant argues that the prosecutor engaged in misconduct during rebuttal by asserting that defense counsel's arguments were "red herrings," "great showmanship," and "defense attorney 101," and by setting forth a time line to underscore the prosecutor's "red herring" characterization. Viewed in isolation, these types of "red herring" remarks may appear as an improper attack on defense counsel's veracity or a suggestion that defense counsel was trying to mislead the jury. *See*

13

*Unger*, 278 Mich App at 236, 238. However, the prosecutor's remarks must be considered in light of defense counsel's comments, and "[a]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001).

When considered in light of defense counsel's arguments and comments, the prosecutor's statements during rebuttal were a fair response to defense counsel's remarks. Specifically, in attempting to explain why defendant had been susceptible to Humphrey's machinations, defense counsel's closing argument included a lengthy discussion of defendant's family history and his childhood, including remarks about how defendant was raised without a father and how defendant was "taken away" from his family at age 14. In response, the prosecutor simply asserted that defendant's family history was irrelevant and that the jury should not allow sympathy for defendant to affect their verdict. Later, the prosecutor urged the jury to evaluate defense counsel's arguments regarding defendant's relationship with Humphrey in light of the "time line" of events. On the whole, as part of the prosecutor's response to defense counsel's argument about defendant's childhood and his relationship with Humphrey, the prosecutor's references to a "red herring" and similar characterizations of defense counsel's arguments did not deprive defendant of a fair trial. *See Dobek*, 274 Mich App at 67 (concluding "red herring" remark during rebuttal as response to defense counsel's argument did not warrant reversal); Watson, 245 Mich App at 592-593 (same). Defendant has not shown plain error.

Third, defendant argues that the prosecutor engaged in misconduct during rebuttal by (1) arguing that text messages discussed at trial were proof defendant knew the drinks were drugged and (2) stating that defendant "raped [SS] afterwards." There is no merit to this argument. The evidence presented at trial included evidence of text messages between defendant and Humphrey in which they discussed their plans to meet women and get them to drink, and the evidence indicated that defendant continued to spend time with Humphrey—and that, by his own admission, he had sex with SS—after defendant had reason to believe that Humphrey was drugging women. Considering the evidence presented at trial, these arguments were well within the prosecutor's "great latitude" to argue the evidence and all reasonable inferences as it related to his theory of the case. *See Unger*, 278 Mich App at 236. Defendant has not shown error.

Finally, defendant argues that the prosecutor engaged in misconduct during rebuttal by denigrating defendant insofar as the prosecutor (1)

14

emphasized that defendant prepared for trial by reading transcripts from Humphrey's trial and (2) characterized defendant as a "professional witness" because he looked at the jury when answering questions. A prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remark." *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995). But "[a] prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Considered in context, the prosecutor challenged defendant's credibility, but the prosecutor did not denigrate defendant with intemperate and prejudicial remarks. *See Bahoda*, 448 Mich at 283, 288. For example, defendant acknowledged in his testimony that he prepared for trial by reading transcripts of the women's testimony from a previous trial, and the prosecutor used this fact—and other evidence—to argue that defendant conformed his version of events to match the evidence. 3 Overall, in context, the prosecutor's reference to the fact that defendant read the transcripts of the women's testimony was a comment on defendant's credibility. This was not error. *See Launsburry*, 217 Mich App at 361.

With regard to the "professional witness" comment, in context, this remark was actually part of a larger argument by the prosecutor to the effect that defendant was "not dumb." The prosecutor made this argument in response to defense counsel's characterization of defendant as a "wing man" who was unwittingly used by Humphrey; indeed, defense counsel compared Humphrey to a "magician" and characterized him as a "villain" who used others, including defendant, like "pawns." In response to these remarks, the prosecutor argued that defendant showed intelligence by testifying like "a professional witness;" that is, like the experts and police officers, defendant addressed the jury and attempted to engage the jury because "he's not dumb" and "he['s] not stupid." In context, the prosecutor did not disparage defendant for testifying like a "professional witness." Instead, the prosecutor indicated that defendant's manner of testifying was "very smart" and a clear indication that defendant was "not stupid." As a response to defense counsel's assertion that Humphrey was a villain using defendant like a pawn, the prosecutor did not denigrate defendant by arguing that defendant was also an intelligent man. *See Bahoda*, 448 Mich at 283, 288; *Watson*, 245 Mich App at 593.

On the whole, defendant has not shown that the prosecutor engaged in misconduct. Moreover, even if some of the prosecutor's remarks were unwise or intemperate, the remarks were not such as would be likely to "deflect the jury's attention from the evidence presented in this case."

*Unger*, 278 Mich App at 237. Any prejudice could have been cured with a timely jury instruction. See *id.* at 235. Indeed, the trial court instructed the jury that it was the jury's "job and nobody else's" to decide the facts of the case and that, in reaching a verdict, the jury must decide the case "based only on the evidence" without letting "sympathy or prejudice influence [its] decision." Further, the trial court instructed the jury that the "lawyers' statements and arguments are not evidence." Jurors are presumed to follow their instructions, and these instructions alleviated any prejudice to defendant resulting from the prosecutor's comments. See *id.*; *People v Ullah*, 216 Mich App 669, 683; 550 NW2d 568 (1996).

*People v. Stiff*, 2019 WL 5198929 at *6-8 (footnotes omitted).

After expressly noting Petitioner's default in failing to object, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989).

As explained above, Stiff must show either cause and prejudice, or actual innocence to overcome his procedural default of his prosecutorial misconduct claims.

As cause for his procedural default, Stiff argues that his counsel erred by not objecting to each instance of alleged prosecutorial misconduct. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a

claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. In the opinion of the undersigned, Stiff cannot show that counsel erred by not objecting to the prosecutor's arguments.

Stiff similarly cannot show prejudice. In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *United States v. Young*, 470 U.S. 1, 11–12 (1985). The court also must

17

consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935). "[A] prosecutor's comments violate the defendant's right to due process only if, *in context*, they 'undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice.'" *Winowiecki v. Gidley*, No. 20-1461, 2020 WL 6743472, at *2 (6th Cir. Sept. 8, 2020) (emphasis added) (quoting *Young*, 470 U.S. at 16); *see also United States v. McQuarrie*, 817 F. App'x 63, 81 (6th Cir. 2020) ("[C]ontext is key . . . .").

"[T]he government may not rely on prejudicial facts not in evidence when making its closing arguments." *United States v. Roach*, 502 F.3d 425, 434 (6th Cir. 2007). Nonetheless, "[a] prosecutor has 'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (*quoting Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that

the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

Stiff has not shown that the prosecutor made improper arguments during trial. "A prosecutor is permitted a certain degree of latitude in summation." *United States v Barker*, 553 F.2d 1013, 1025 (6th Cir. 1977). The scope of review in a habeas corpus action of prosecutorial misconduct is narrow. A petitioner must do more than show erroneous conduct. "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)), *cert. denied*, 114 S. Ct. 1317 (1994). Consequently, the giving of cautionary instructions is relevant to determining whether fundamental fairness was denied. *Id.* at 1356.

As set forth persuasively by the Michigan Court of Appeals, the prosecutor did not commit misconduct during his closing statements to the jury.   In addition, the trial court properly instructed the jury that attorney argument is not evidence and that it was jurors' responsibility to give weight to the evidence presented.  (ECF No. 6-3, PageID.1048-1049; ECF No. 6-6, PageID.1638-1639.)  Stiff has failed to establish cause by showing that his counsel was ineffective by not objecting to these statements during closing and rebuttal argument.  Similarly, Stiff has failed to show that he was prejudiced because he cannot show prosecutorial misconduct.  Petitioner fails to overcome the procedural default of his prosecutorial misconduct claims and his claims lack merit.

## VI.    Failure to Strike Jurors (Claim III)

Stiff claims that his trial counsel was ineffective for failing to strike two jurors, or at a minimum, to make further inquiry regarding their potential biases.  The first juror in question stated that he had read about the case and was aware of the details of the crimes. However, the juror stated that he could still be "fair and impartial." The second prospective juror in question stated that her younger brother was the victim in an ongoing sexual assault case and indicated that this situation could "impact" her ability to serve on the jury. However, this prospective juror was dismissed for cause by stipulation of the parties and did *not* serve on the jury.  The Michigan Court of Appeals found petitioner's claim without merit:

> "To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different

outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "An attorney's decisions relating to the selection of jurors generally involve matters of trial strategy," which this Court will not evaluate with the benefit of hindsight. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) (opinion by O'CONNELL, J.).

In this case, defendant argues that counsel provided ineffective assistance by failing to remove two jurors or, at a minimum, to make further inquiry regarding their potential biases.  The first juror in question stated that he had read about the case and was aware of the details of the crimes. However, in response to defense counsel's questioning, this juror also stated that he could nevertheless be "fair and impartial." Elsewhere, the juror said that he could "fulfill [his] duty as a juror" and that he had "no problem following the cookbook," meaning "the law." On this record, defendant has not overcome the presumption that defense counsel's failure to challenge the juror was a matter of sound trial strategy, particularly when defense counsel had the opportunity to observe the juror during voir dire and when the juror maintained that he could be fair and impartial. Cf. *Unger*, 278 Mich App at 257-258. See also *Johnson*, 245 Mich App at 259. Accordingly, defendant has not shown that he was denied the effective assistance of counsel, and he is not entitled to relief on this basis.

The second potential juror in question stated that her younger brother was the victim in an ongoing sexual assault case, and she indicated that the situation with her brother could "impact" her ability to serve on the jury. Notably, contrary to defendant's assertions that this woman served on defendant's jury, this prospective juror was dismissed for cause by stipulation of the parties, and she did *not* serve on the jury. Accordingly, defendant has not established the factual predicate of his ineffective assistance claim, see *Carbin*, 463 Mich at 600, and he has not shown that defense counsel was ineffective.

On the whole, jury selection is generally a matter of trial strategy, *Johnson*, 245 Mich App at 259, and defendant has not shown that counsel provided ineffective assistance in selecting what counsel surely believed was a "reasonable, fair, and honest jury," *Unger*, 278 Mich App at 258. Accordingly, defendant's claim of ineffective assistance is without merit.

*People v. Stiff*, 2019 WL 5198929 at *8.

Stiff has failed to show that his counsel was ineffective during jury selection. *Strickland*, 466 U.S. at 690. As the Michigan Court of Appeals explained, the juror who had read about the case in the newspaper indicated that he could remain fair and impartial after answering several questions regarding any potential bias he may have had about the case. Secondly, the prospective juror who indicated that her younger brother was the victim in an on-going sexual assault case was excused for cause and was not a member of the jury. Stiff has failed to show that the Michigan Court of Appeals decision was unreasonable.

## VII. Admission of Stiff's Written Statements (Claim IV)

Stiff claims that the trial court erred by admitting testimony, over his counsel's objection, from police Detective Lucker regarding Stiff's written statements allegedly made as part of a plea discussion. Stiff claims that the statements were inadmissible under MRE 410(4). MRE 410(4) provides that statements "made in the course of plea discussions with an attorney for the prosecuting authority" are inadmissible. *Id.*

The trial court determined that the statements were admissible because there had been no plea discussions or any negotiations about resolving the case at the time Stiff made these statements. (ECF No. 6-5, PageID.1372-1374.) Detective Luker testified that he received a written communication from Stiff indicating that he could provide information regarding the type of drugs used and names of victims. (*Id.*, PageID.1380.)

22

First, a federal court is unable to grant habeas relief to a state prisoner if the prisoner did not exhaust remedies available in the state courts. In fulfilling this exhaustion requirement, the prisoner must have fairly presented the federal claims to all levels of the state appellate system. *Duncan v. Henry,* 513 U.S. 346, 365-66 (1995). Stiff failed to properly exhaust this claim by presenting it to the Michigan Supreme Court.  (ECF No. 5-7, PageID.729-741.)  Nevertheless, for the same reasons stated by the Michigan Court of Appeals, this claim lacks merit.  The Michigan Court of Appeals affirmed the trial court's ruling that Detective Luker's testimony was admissible:

> In this case, defendant initiated contact with police in April 2016 by sending a "kite" from jail to police indicating that he had "valuable info." When police met with defendant, he told them that he had "important information that he thought [the police] should know about, um, regarding the type of drugs that were used, um, and possibly some more victims' names." Police did not attempt to offer defendant any type of deal, and when the conversation between defendant and police occurred, the prosecution had made no offers to defendant nor had defendant requested an offer of any kind. Indeed, in response to questions by the trial court, defense counsel expressly conceded that the police did not offer defendant a guilty plea and that the possibility of a plea was *never* discussed. On these facts, the trial court concluded that plea discussions were not ongoing and that defendant's statement to police was, therefore, not made in the course of plea discussions with an attorney for the prosecuting authority. Accordingly, the trial court found MRE 410(4) inapplicable.
>
> Given defense counsel's concession that the possibility of a plea was never discussed, the trial court's factual findings were not clearly erroneous, and the trial court did not err by concluding that MRE 410(4) was inapplicable. See *People v Hicks*, 185 Mich App 107, 114; 460 NW2d 569 (1990) ("Our review of the record indicates that MRE 410 is inapplicable in the instant case *because the possibility of a guilty plea was never discussed nor was one offered or accepted.*") (emphasis added). At most, defendant may have hoped that his offer to cooperate would lead to favorable results, but the fact remains that defendant initiated

contact with police without mentioning the possibility of a deal in his kite, and he then voluntarily incriminated himself without any statement from the authorities to suggest that they were amenable to negotiating with him. See *Smart*, 304 Mich App at 253 ("[S]imply because a defendant seeks to engage in a plea negotiation does not mean that the person to whom he is speaking (a prosecuting attorney or another person) would or must view any discussion with the defendant as a plea negotiation."); see also *United States v Levy*, 578 F2d 896, 901-902 (CA 2, 1978); *United States v Brooks*, 670 F2d 625, 628 (CA 5, 1982). Overall, when the possibility of a plea was never discussed, any expectation by defendant to negotiate a plea cannot be considered reasonable given the totality of the circumstances, and therefore, it cannot be concluded that defendant's statements were made in the course of plea discussions with the prosecuting authority. See *Dunn*, 446 Mich at 415; *Smart*, 304 Mich App at 249. Accordingly, MRE 410(4) did not apply, and the trial court did not abuse its discretion by admitting defendant's statement.

Even assuming the trial court erred by admitting the statement, defendant would not be entitled to relief on appeal because, after an examination of the entire cause, it does not affirmatively appear more probable than not that the error was outcome-determinative. See *Burns*, 494 Mich at 110. A police officer testified that defendant said that he had "important information that he thought we should know about, um, regarding the type of drugs that were used, um, and possibly some more victims' names." However, the officer did not testify that defendant actually gave police any information about the types of drugs or any additional victim names. The prejudicial effect of this somewhat vague statement is relatively minimal when considered in light of the other overwhelming evidence of defendant's guilt. Defendant is not entitled to relief on appeal.

*People v. Stiff*, 2019 WL 5198929 at *10 (footnote omitted).

Once again, Stiff is asserting that the trial court violated a state court rule of evidence by admitting this testimony during trial.  As previously explained, Stiff's assertions that the trial court erred in making evidentiary rulings are not cognizable claims in a habeas petition.  *Estelle*, 502 U.S. at 62; *Seymour,* 224 F.3d at 552.

Moreover, Stiff has failed to show that his constitutional rights were violated by the admission of Detective Luker's testimony concerning Stiff's written statements.

## VIII.  Admission of Text Messages (Claim V)

Stiff claims the trial court erred when it allowed the prosecutor to question Stiff about text messages between himself and his co-defendant.   Stiff argues that the admission of this evidence violated MRE 402 (irrelevant evidence is not admissible) because the evidence was not relevant, MRE 403 (relevant evidence may be excluded if the probative value is substantially outweighed by the danger of prejudice) because the prejudicial effect of this testimony outweighed the probative value, and MRE 404(b)(2) (notice of other acts evidence) because the prosecutor failed to provide notice of the intention to use similar act evidence.

The Michigan Court of Appeals rejected Stiff's arguments:

In this case, the prosecutor used the text messages from 2016 to impeach defendant during cross-examination. Considering the text messages in light of defendant's claims that he never encouraged the women to drink or discussed women drinking with Humphrey, the trial court did not abuse its discretion by allowing cross-examination on the text messages in order to impeach defendant's credibility. Defendant's credibility was relevant, and cross-examination related to impeaching defendant's credibility with prior statements inconsistent with his trial testimony was generally permissible. See *People v Clary*, 494 Mich 260, 278; 833 NW2d 308 (2013). Accordingly, the trial court did not abuse its discretion by overruling defendant's relevancy objection, and allowing use of the text messages for impeachment purposes.

In contrast, on appeal, defendant asserts that, if the text messages were relevant, the text messages constituted other-acts evidence within the meaning of MRE 404(b) and that questions about the text messages were improper because the prosecutor failed to provide notice required by MRE 404(b)(2). Defendant's MRE 404(b)(2) argument is unpreserved, and defendant has not shown plain error. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). As noted by the prosecutor, the text

messages were statements—rather than other-acts—and "a prior statement does not constitute a prior bad act coming under MRE 404(b) because it is just that, a prior statement and not a prior bad act." *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989), aff'd 437 Mich 149 (1991). See also *People v Goddard*, 429 Mich 505, 514-515; 418 NW2d 881 (1988). Accordingly, notice under MRE 404(b)(2) was not required to use these statements for impeachment purposes during cross-examination. Moreover, even if the prosecutor's questions are construed as questions about defendant's conduct, cross-examination about specific instances of conduct for impeachment purposes is permissible under MRE 608(b). See *People v Messenger*, 221 Mich App 171, 180; 561 NW2d 463 (1997). And, in contrast to MRE 404(b), "Rule 608(b) does not require advance notice of the prosecutor's intent to use specific instances of defendant's conduct to impeach the defendant when he testifies." *United States v Tomblin*, 46 F3d 1369, 1388 n 51 (CA 5, 1995). Defendant offers no authority for the proposition that pretrial notice was required to use the text messages for impeachment, and accordingly, defendant has not shown plain error. See *Coy*, 258 Mich App at 12.

*People v. Stiff*, 2019 WL 5198929 at *11-12 (footnotes omitted).

Stiff asserts that the trial court violated state law evidentiary rules in allowing the prosecutor to cross examine him on these issues. As previously explained Stiff's assertions that the trial court erred in making evidentiary rulings are not cognizable claims in a habeas petition. *Estelle*, 502 U.S. 62; *Seymour*, 224 F.3d at 552. Petitioner has failed to show that the admission of these messages was improper, or that because of this admission he was denied a fair trial. Most importantly, Stiff has failed to show that the Michigan Court of Appeals decision rejecting this claim was based on an unreasonable application of clearly established federal law.

### IX.    Fourth Amendment (Claim VI)

Stiff argues that the police obtained a search warrant for his house based on fabricated evidence and false information.   The Michigan Court of Appeals rejected Stiff's claim because he failed to develop his objections in the trial court:

> In this case, because defendant never raised this issue in the trial court, the search warrant and supporting affidavit do not appear in the lower court file that forms the basis for this Court's review, see MCR 7.210(A)(1), and there is simply no record support for defendant's claim that police specifically averred that they expected to find GHB (as opposed to date rape drugs generally or the specific drugs found in KW's urine). There is also no indication in the record regarding what other information the affidavit contained. See *Ulman*, 244 Mich App at 510. In short, without the search warrant and affidavit, it is impossible to evaluate defendant's assertions regarding GHB and to otherwise evaluate whether the affidavit established probable cause. Additionally, even assuming some deficiency in the affidavit that would invalidate the search warrant and merit application of the exclusionary rule, defendant cannot demonstrate that any error was outcome-determinative. In his brief, defendant does not address what evidence should have been suppressed on the basis of the purportedly invalid search warrant. Indeed, the police testified that they did *not* find date rape drugs during the search. On the whole, defendant cannot show outcome-determinative error relating to the search warrant when had not identified any evidence obtained from an invalid search or explained how the admission of this evidence affected the outcome of the proceedings.

*People v. Stiff*, 2019 WL 5198929 at *12.

Stiff failed to file a motion to suppress in the trial court, resulting in his procedural default of this claim in this habeas proceeding.   But even if had raised the issue properly in the state courts, his claim is not cognizable in this proceeding, because it is subject to dismissal under the rule announced in *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Supreme Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the

Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482.

In *Riley v. Gray*, 674 F.2d 522 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982), the Sixth Circuit interpreted *Stone* as requiring the district court to make two distinct inquiries in habeas proceedings:

> Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3rd Cir. 1980); *Gates v. Henderson*, 568 F.2d 830, 840 (2nd Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

*Id.* at 526 (footnote omitted). The record reveals no reason why Stiff would have been prevented from raising his Fourth Amendment claims in the state courts. Accordingly, in the opinion of the undersigned, Stiff is precluded from raising this claim under the rule announced in *Stone v. Powell*.

## X. Ineffective Assistance of Counsel (Claims VII, VIII, IX, X, XI)

Stiff sets forth several reasons why his defense counsel was ineffective. Stiff argues that defense counsel failed to present bar surveillance video, failed to require victim KW to bring in her medical records to trial, failed to impeach witnesses, failed to utilize a toxicologist and private investigator paid for by the court, and erred by persuading Stiff to openly discuss his prior criminal history during testimony.

The Michigan Court of Appeals rejected each of Stiff's ineffective assistance of counsel arguments:

"Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

As an initial matter, the majority of defendant's ineffective assistance arguments fail because he has not established the factual predicate for his claims. For instance, defendant claims (1) that a video from a bar would have contradicted KW's and SL's testimony, (2) that SS's drug tests were negative, (3) that there was video showing SS engaging in voluntary sexual activity, (4) that KW's medical records showed or could have shown that she had prescriptions for the drugs found in her urine, and (5) that a toxicologist or a private investigator could have aided the defense. None of these assertions have any basis in the lower court record. Absent any indication that the evidence and testimony in question exists and could have aided the defense, defendant has not overcome the presumption that counsel's decisions regarding what evidence to present, what witnesses to call, and how to question witnesses were a matter of sound trial strategy. See *id*. at 248-249. He has not shown a reasonable probability that counsel's purported failures affected the outcome of the proceedings. See *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Accordingly, his ineffective assistance claims on these bases are without merit. See *Jackson*, 292 Mich App at 600-601.

Defendant's remaining claim involves the assertion that defense counsel provided ineffective assistance by advising defendant to testify openly about his criminal history. Unlike defendant's other claims, there is factual support for defendant's assertion that defense counsel advised him to discuss his criminal history at trial. During trial, defense counsel indicated defendant would likely testify, and defense counsel spoke with defendant to make sure that defendant understood "the ramifications that can come with that." The details underlying defendant's decision to testify and the potential ramifications were placed on the record during the colloquy on defendant's decision to testify, including the fact that the defense intended to delve into defendant's prior CSC conviction relating to E. Although, the record shows that defense counsel advised defendant to discuss his criminal history at trial, defendant has not overcome the presumption that counsel's decision was a matter of trial strategy, and, even assuming counsel's performance was deficient, defendant cannot show a reasonable probability of a different outcome. Accordingly, defendant's claim fails.

29

First, the colloquy at trial indicates that defense counsel—with defendant's approval—made a strategic decision to delve into defendant's criminal history. Such a decision does not appear unreasonable when the facts relating to E were already before the jury as a result of evidence introduced in the prosecutor's case-in-chief and when the additional information defendant offered in his testimony in terms of his plea, sentence, and time served, enabled defense counsel to craft an argument regarding defendant's susceptibility to being Humphrey's unwitting wingman. In other words, defense counsel elicited this testimony in order to argue that defendant stopped "maturing at age 14" when he was "taken away from his family" and placed in the company of "prisoners and felons." Given defendant's background, defense counsel argued that Humphrey chose defendant to be his wingman "for a reason just like the victims here." On this record, defense counsel's decision was a matter of trial strategy, and defendant cannot establish the ineffective assistance of counsel. See *Putman*, 309 Mich App at 248.

Second, even assuming defense counsel's performance was deficient, defendant cannot show a reasonable probability of a different outcome. See *Jackson*, 292 Mich App at 600-601. Again, evidence relating to E was already before the jury. Further, the evidence of defendant's guilt was considerable and overwhelmingly demonstrated that, while aided and abetted by Humphrey, defendant sexually assaulted KW and SL when he knew or had reason to know that they were mentally incapacitated or physically helpless. See MCL 750.520b(1)(d)(*i*). Accordingly, on the record presented, defendant has not shown that counsel's purported deficiencies affected the outcome of the proceedings, and his ineffective assistance claim is without merit. See *Jackson*, 292 Mich App at 600-601.

*People v. Stiff*, 2019 WL 5198929 at **13-14 (footnote omitted).

As explained above, in *Strickland*, 466 U.S. 668, the Supreme Court stated the petitioner claiming ineffective assistance of counsel must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  Stiff is unable to make that showing.

Stiff's claims of ineffective assistance of counsel are based solely on speculation as to what potential evidence, that may or may not have existed, could have shown. Stiff has not provided any evidence that could show that defense counsel was ineffective for failing to investigate other evidence or in failing to present additional evidence during trial. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004).

"It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689). Absent evidence of what the investigation would have revealed or what additional witnesses might have said, "*Strickland*'s deferential standard and AEDPA's doubly deferential standard require a finding that counsel's performance was not deficient." *Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016); *see also Carter v. Mitchell*, 443 F.3d 517, 531 (6th Cir. 2006) (petitioner "provided no basis for a finding that trial counsel's investigation was unreasonable" where he did not introduce "any statement from trial counsel describing what [counsel] did or did not do in investigating [the petitioner's] background"); *Beuke v. Houk*, 537 F.3d 618, 644 (6th Cir. 2008) (rejecting ineffective-assistance claim on habeas review where

petitioner "ask[ed] this court to assume," based on "sheer speculation," that his trial counsel did not perform an adequate mitigation investigation and where petitioner failed to provide "enough evidence to confirm or deny that conclusion"). Further, "the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Yancey v. Haas*, 742 F. App'x 980, 982-83 (6th Cir 2018) (quoting *Burt v. Titlow*, 571 U.S. at 23).

Finally, Stiff's claim that his trial counsel was ineffective for causing him to testify about his past criminal history lacks merit. It was part of Stiff's defense strategy to testify about his past criminal history. Before Stiff testified in his own defense, trial counsel indicated to the Court that it was the defense strategy for Stiff to testify about his past criminal history. (ECF No. 6-6, PageID.1445-1447.) Trial counsel indicated that Stiff agreed with this strategy. (*Id.*) The Court then questioned Stiff about this strategy outside the presence of the jury, and Stiff agreed that testifying about his criminal history was part of his defense strategy. (*Id.*, PageID.1447-1448.) As the Michigan Court of Appeals further explained, Stiff was attempting to argue to the jury that he was a naïve victim of his codefendant's criminal scheme.

Stiff has failed to support his ineffective assistance of counsel claims with evidence and Stiff's speculation is not enough to overcome the presumption that counsel acted within the range of reasonableness. Most importantly, Stiff has failed to establish that the Michigan Court of Appeals decision rejecting his ineffective assistance of counsel claims was unreasonable.

## XI.    Admission of Police Report (Claim XII)

Finally, Stiff argues that the trial court erred by allowing police officer Burnham to read her report into the record after she testified that she could no longer recall her conversation with Stiff during her investigation.  The Michigan Court of Appeals rejected Stiff's argument that the reading of the report violated hearsay rules:

> Burnham's police report meets these criteria because (1) she once had knowledge of her conversation with defendant relating to her investigation into the assault on E, (2) at the time of trial she no longer recalled the conversation, and (3) she personally made the police report. We note that Burnham's report contains statements made by defendant to Burnham about the sexual assault and the events relating to the sexual assault itself would be outside Burnham's personal knowledge. However, this does not alter the MRE 803(5) analysis because Burnham recorded her recollection *of the interview*, and defendant's statements to Burnham during the interview constitute an admission of a party-opponent, which is not hearsay under MRE 801(d)(2)(A). Cf. *United States v Green*, 258 F3d 683, 689-690 (CA 7, 2001) (relying on FRE 803(5) and FRE 801(d)(2)(A) to conclude that a police summary of an interview containing statements by the defendant could be introduced as a police officer's recorded recollection of the interview); see also MRE 805 (recognizing that a statement within hearsay is not excluded "if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules"). Accordingly, MRE 803(5) applies, and the trial court did not abuse its discretion by allowing Burnham to read her report. Additionally, because the report was properly admitted under MRE 803(5), any objection by defense counsel to the reading of Burnham's report would have been futile. Defense counsel was not ineffective for failing to make a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

*People v. Stiff*, 2019 WL 5198929 at *14 (footnote omitted).

Again, Stiff argues that the Court failed to properly apply Michigan evidentiary rules in admitting evidence.  Stiff's assertions that the trial court erred in making evidentiary rulings are not cognizable claims in a habeas petition.  *Estelle*,

502 U.S. 62; *Seymour,* 224 F.3d at 552.   Moreover, the police report was properly admitted under MRE 803(5).   Stiff has failed to show that the Michigan Court of Appeals decision on this issue was unreasonable under clearly established federal law.

As noted, Stiff raised several claims asserting trial court error in admitting evidence under state law evidentiary rules.  (Claims I, IV, V, and XII).  For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht*, 507 at 637.  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error."  *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).  Stiff has failed to meet this standard.

## XII.   Conclusion

Stiff's petition for a writ of habeas corpus lacks merit.  In addition, as to the issues reviewed on the merits by the the Michigan Court of Appeals, Stiff has failed to show that the decision of the Michigan court was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

For the reasons set forth above, Stiff's petition for a writ of habeas corpus is denied and this case is dismissed.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).


Dated:   October 11, 2023                                    /s/ *Maarten Vermaat*
                                                                       MAARTEN VERMAAT
                                                                       U.S. MAGISTRATE JUDGE